IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01422-KLM

TAZARNA AKIRA BEY,

    Plaintiff,

v.

SGT. REED, Arapahoe County Sergeant, in his individual and official capacity,
LT. MITCHELL, Arapahoe County Lieutenant, in his individual and official capacity,
DEPUTY GILLESPIE, Arapahoe County Deputy, in his individual and official capacity, and
DEPUTY ERICSON, Arapahoe County Deputy, in his individual and official capacity,

    Defendants.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)** [#13][1] (the "Motion").[2] Plaintiff, who is proceeding pro se,[3] filed a Response [#21] in opposition to the Motion, and Defendants filed

---

[1] "[#13]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties. *See* [#16, #17].

[3] Although Plaintiff purports to have filed her claim "not in Pro Se but in Propria Persona," there is no discernable difference between the two terms. *Propria Persona*, Black's Law Dictionary (11th ed. 2019) (referring to "pro se"); *United States ex rel. Rockefeller v. Westinghouse Elec. Co.*, 274 F. Supp. 2d 10, 12 n.3 (D.D.C. 2003) (noting that "the terms pro se and pro persona (pro per) are analogous" (citing Black's Law Dictionary (7th ed. 1999))); *Wik v. Kunego*, No. 11-CV-6205-CJS, 2014 WL 1746477, at *5 (W.D.N.Y. Apr. 30, 2014) ("Pro se is synonymous with in propria persona. The court understands Plaintiff's status as a person representing himself." (citations omitted)).
    The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404

a Reply [#22].  The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Motion [#13] is **GRANTED**.

## I.  Background

The following allegations from the Amended Complaint [#6] are accepted as true for the purpose of adjudicating the Motion [#13].[4]  *See Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).  On January 28, 2018, Plaintiff, her husband, and her daughter were driving home when they were stopped because the car's passenger-side headlight was out. *Am. Compl.* [#6] at 6.  After the stopping officer asked to see the husband's driver's license, Defendants Reed, Mitchell, Gillespie, and Ericson arrived on the scene.  *Id.*  For reasons not clear in the Amended Complaint [#6], one unidentified Defendant allegedly tried to pull Plaintiff's husband through the driver-side window.  *Id.*  Afterward, Plaintiff attempted to get out of the car, but an unidentified Defendant closed the passenger-side door, catching Plaintiff's leg in the process.  *Id.*  Plaintiff does not allege any injury as a result of this incident.

Stuck in the car, Plaintiff alleges that she tried to have Defendants Reed and Mitchell explain what was going on, but Defendant Mitchell responded, "we will tell you in a minute,"

---

U.S. 519, 520-521 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[4] The Court notes at the outset that Plaintiff's Amended Complaint [#6] is not a model of clarity and lacks considerable detail needed to make full sense of the events underlying her claim, including which Defendants took which actions at what times.

then walked away.  *Id.*  Plaintiff proceeded to step out of the car, through the driver's side, and asked the arresting officer why her husband was being arrested.  *Id.* at 7.  At this moment, Plaintiff alleges that all four Defendants grabbed her, slammed her against the car's backdoor window, and handcuffed her.  *Id.*  In the process, Plaintiff alleges that the officers injured her left arm, although the precise nature of her injury is unclear.  *Id.*  Defendant Gillespie then placed Plaintiff in one of the police cars and wrote a ticket charging her with Obstructing a Public Servant pursuant to Colo. Rev. Stat. § 18–8–104.  *Id.*  Plaintiff allegedly continued to suffer from pain and weakness in her arm at least until the date she filed her Amended Complaint [#6] on July 9, 2018.  *Id.* at 7.

Plaintiff filed her initial Complaint on June 7, 2018, alleging vague and generalized constitutional violations against Defendants and four other parties.  *See Compl.* [#1] at 2.  However, pursuant to an Order to Dismiss in Part and Draw in Part, all claims and parties except Plaintiff's 42 U.S.C. § 1983 Fourth Amendment excessive force claim against these four Defendants in their individual and official capacities[5] have been dismissed.  *See Order* [#7] at 8.  As a result of Defendants' alleged actions, Plaintiff requests $75,000 in compensatory damages and $75,000 in punitive damages, as well as injunctive relief.  *Am. Compl.* [#6] at 10.  Defendants filed the instant Motion [#13] on September 17, 2018, seeking to dismiss Plaintiff's excessive force claim pursuant to Fed. R. Civ. P. 12(b)(6) on

---

[5] Plaintiff does not specifically state in her Amended Complaint [#6] that she is suing Defendants in their individual or official capacities.  However, "[b]ecause she is proceeding pro se, we give her the benefit of that doubt."  *Hull v. State of N.M. Taxation & Revenue Dep't's Motor Vehicle Div.*,179 F. App'x 445, 447 (10th Cir. 2006) (citing *Brady v. Smith*, 656 F.2d 466, 469 (9th Cir.1981) (court liberally construes pleadings of party proceeding pro se as asserting claims against named defendants in both their official and individual capacities)).  Therefore, the Court presumes Plaintiff is suing Defendants in both their official and individual capacities.

the premise that they have qualified immunity. *Motion* [#13] at 3.

## II. Standard of Review

**A.	Fed R. Civ. P. 12(b)(1)**

Subject matter jurisdiction may be challenged by a party or raised sua sponte by the court at any point in the proceeding. *See, e.g.*, *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 16-19, (1951); *Harris v. Illinois–California Express, Inc.*, 687 F.2d 1361, 1366 (10th Cir. 1982); Fed. R. Civ. P. 12(h)(3). Rule 12(b)(1) concerns whether the Court has jurisdiction to properly hear the case before it. Dismissal of a federal claim for lack of subject-matter jurisdiction "is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)). Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1). Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed. *F. & S. Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

**B.	Fed. R. Civ. P. 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ.

P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted").  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations."  (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n] [ ] that the pleader

is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III. Analysis

As an initial matter, Defendants provided body camera footage of the incident at issue for the Court to consider in adjudicating their Motion [#13].[6] *See Motion* [#13] at 3; *Reply* [#22] at 2; *Defs' Ex. 1, Conventionally Submitted Video* [#13-2]. Normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 2000). However, the Court may consider outside documents that are both central to a plaintiff's claim and that are specifically referred to in her complaint. *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).

Defendants argue that the Court should consider the video footage because it "captures the incident underlying Plaintiff's excessive force claim and is therefore integral to Plaintiff's Amended Complaint." *Motion* [#13] at 7 n.4. However, Plaintiff does not rely on the video at any point in her Amended Complaint. In fact, the footage is never specifically referenced in the Amended Complaint; the first mention of it occurs in Defendants' Motion [#13]. Evidently, the video is, therefore, not "integral" to Plaintiff's claim. *See, e.g.*, *Estate of Valverde v. Dodge*, No. 16-cv-01703-MSK-MEH, 2017 WL 1862283, at *3 (D. Colo. May 9, 2017) (declining to review police camera footage on the

---

[6] Defendants also provide other documents which are immaterial to the resolution of their Motion [#13]. *See Reply* [#22] at 2; *Defs' Ex. 1, Plea Agreement* [#22-1]; *Defs' Ex. 2, Motion to Dismiss and Quash Outstanding Warrants* [#22-2]. Therefore, the Court need not determine whether it can properly examine them in the context of a Rule 12(b)(6) motion.

basis that it showed the facts underlying the plaintiff's claim, stating "[i]ndeed, after reading the Amended Complaint, the Court was not aware that a video of the incident exists"). If the Court were to consider the footage for the purpose of contradicting Plaintiff's allegations, as Defendants urge, the Court would need to convert the Motion [#13] into a motion for summary judgment. *See, e.g.*, *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (holding that the District Court erroneously used the defendants' version of the facts as attached to a Rule 12(b)(6) motion to dismiss). Thus, the Court will not review the video on this Motion [#13] for the purposes of refuting Plaintiff's allegations.

### A. Subject Matter Jurisdiction

Defendants do not raise a subject matter jurisdiction argument pursuant to Rule 12(b)(1) in their Motion [#13]. However, the Court must consider the question sua sponte when it comes to the Court's attention that the Court may lack jurisdiction over a matter. *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1252 (10th Cir. 1988); *Smith v. Krieger*, 643 F. Supp. 2d 1274, 1293 n.6 (D. Colo. 2009). Accordingly, the Court first considers whether it has subject matter jurisdiction over Plaintiff's claim. *See Herrara v. Alliant Specialty Ins. Servs., Inc.*, No. 11-cv-00050-REB-CBS, 2012 WL 959405, at *3 (D. Colo. Mar. 21, 2012) (stating that issues of subject matter jurisdiction "must be resolved before the court may address other issues presented in the motion").

Plaintiff seeks injunctive relief in the form of being "free from all the harassments" allegedly on the part of Defendants. *Am. Compl.* [#6] at 10. However, Plaintiff has not alleged any facts to support that she is being harassed in an "ongoing and continuous manner," making the claim against Defendants in their individual and official capacities moot. *See, e.g.*, *Cary v. Tessier*, No. 12-cv-02072-RM-KLM, 2014 WL 5298170, at *7 (D.

Colo. Feb. 4, 2014); *see also Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1232 (10th Cir. 2010) (stating that the plaintiff must demonstrate facts indicating an ongoing violation of federal law that would support prospective injunctive relief)). The Court has no jurisdiction to consider moot cases, that is, cases in which "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *United States Parole Commn v. Geraghty*, 445 U.S. 388, 396 (1980) (citation omitted).

Although Plaintiff asserts that "[Defendants] have been hurrahing [sic] Plaintiff and her husband for a while now," *Am. Compl.* [#6] at 7, she has not alleged any facts in support of this conclusory statement, or shown that Defendants continue to harass her. In fact, the sole alleged interaction with any of the four Defendants occurred during the arrest. Thus, the Court finds that Plaintiff has failed to show that there is a live controversy that may be resolved through injunctive relief. Having no subject matter jurisdiction over moot cases, the claim for injunctive relief against Defendants in their individual and official capacities is **dismissed without prejudice as moot**. *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010) ("We have no subject-matter jurisdiction if a case is moot."); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006) (recognizing established rule that "where the district court dismisses for lack of jurisdiction . . . the dismissal must be without prejudice").

**B.     Individual Capacity: Qualified Immunity**

Defendants argue that they are entitled to qualified immunity on Plaintiff's Fourth Amendment excessive force claim. *Motion* [#13] at 2. The doctrine of qualified immunity "shields government officials performing discretionary functions from liability insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant asserts qualified immunity, the burden shifts to the plaintiff to satisfy a strict two-part test demonstrating that the defense is not proper. *Fisher v. City of Las Cruces*, 584 F.3d 888, 893 (10th Cir. 2009). First, viewing the allegations in the light most favorable to the plaintiff, the plaintiff must provide evidence demonstrating that each defendants' actions violated a constitutional or statutory right. *Id.* Second, "the plaintiff must show that the right was clearly established at the time of the alleged unlawful activity." *Id.* These two inquiries may be addressed in any order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). However, raising a qualified immunity defense in a Rule 12(b)(6) motion "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Sayed v. Virginia*, 744 F. App'x 542, 545-46 (10th Cir. 2018) (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)). "A plaintiff need only allege enough factual matter to state a claim that is plausible on its face and provide fair notice to a defendant." *Id.* (internal quotation marks omitted).

When a plaintiff asserts an excessive force claim, she must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2016). However, in circumstances where "the allegations pertaining to the individual

Defendants all relate to a single incident, and all of the individual Defendants are alleged to have been present at that incident and to have acted in concert," it would be "unfair to require a plaintiff to specify individual actors," and notice is assumed. *Bark v. Chacon*, No. 10-cv-1570-WYD-MJW, 2011 WL 1884691, at *5 (D. Colo. May 19, 2011); *see also Mwangi v. Norman*, No. 16-cv-00002-CMA-NYW, 2016 WL 7223270, at *9 (D. Colo. Dec. 13, 2016). Here, Plaintiff's Amended Complaint alleges that all Defendants acted together in a single show of force, applying the handcuffs. [#6] at 7. Further, the Amended Complaint identifies *no* discernable difference between Defendants' individual actions. *See* [#6] at 7. Hence, the Court analyzes Plaintiff's claim in light of Defendants acting concurrently, instead of dismissing for lack of specifying a particular actor. *Bark*, 2011 WL 1884691, at *5.

Regarding whether there was a constitutional violation, Plaintiff's excessive force claim is "governed by the Fourth Amendment's objective reasonableness standard." *Strepka v. Jonsgaard*, No. 10-cv-00320-PAB-KMT, 2011 WL 2883375, at *7 (D. Colo. July 18, 2011) (quoting *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 664 (10th Cir. 2010)). In order to assess objective reasonableness, and thus whether the force was permissible, the Court must consider the totality of the circumstances, including: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Further, the reasonableness of the force used is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Thus, in order to satisfy the first prong and demonstrate a constitutional violation, Plaintiff must show that the totality

of the circumstances demonstrates that Defendants' actions were "objectively unreasonable" and, thus, constitute excessive force. *See Thomson v.Salt Lake Cty.*, 584 F.3d 1304, 1313 ("The precise question asked in an excessive force case is whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.") (internal quotation marks omitted); *see also Davis v. Clifford*, 825 F.3d 1131, 1135 (10th Cir. 2016) (weighing the three *Graham* factors to determine "whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them") (internal quotation marks omitted).

Turning to the first prong of qualified immunity, Plaintiff seems to be claiming that the traffic stop was unlawful, and therefore the use of *any* force is necessarily unreasonable and a violation of her Fourth Amendment rights. *Am. Compl.* at 6-7. However, "a plaintiff's right to recover on an excessive force claim is [not] dependent upon the outcome of an unlawful seizure claim." *Cortez v. McCauley*, 478 F.3d 1108, 1126-27 (10th Cir. 2007) (citation omitted). Whether Plaintiff's arrest was lawful is a separate question, not raised here, and is not determinative of the outcome of her excessive force claim. Further, "a small amount of force . . . is permissible in effecting an arrest under the Fourth Amendment." *Id.* at 1128. Thus, the Court addresses Plaintiff's excessive force claim in the usual manner, regardless of the legality of her arrest. *See id.* at 1128 ("If the plaintiff can prove that the officers used greater force than would have been reasonably necessary . . . [she] is entitled to damages resulting from that excessive force.").

Looking toward the *Graham* factors to assess reasonableness, the first and third factors weigh in favor of Plaintiff. On the first factor, Plaintiff was arrested for obstruction,

a Class Two misdemeanor, which is far from a serious crime. Colo. Rev. Stat. Ann. § 18–8–104(4) (2018); *see Casey v. City of Fed. Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007) (holding that a Class One misdemeanor, more severe than a Class Two, was not a severe crime). For the third factor, nowhere in the Amended Complaint [#6] is there an allusion to resistance. Thus, the first and third *Graham* factors weigh "against the use of anything more than minimal force." *See Davis*, 825 F.3d at 1135.

The second factor, whether the suspect posed a threat to officer or public safety, is a closer call. Plaintiff asserts that when she refused Defendant Reed and Mitchell's apparent order to stay in her car she was simply trying to ensure her husband's safety. *Am. Compl.* [#6] at 7. But it is not her subjective viewpoint that the Court considers. *See Thomson*, 584 F.3d at 1313. In looking at the incident objectively, the factor weighs in favor of Defendants. Regardless of Plaintiff's disposition, an officer can be reasonably put on guard that a person who is not adhering to commands during a stop may be a safety concern. *See Lord v. Hall*, 520 F. App'x 687, 692 (10th Cir. 2013) (finding that officers reasonably believed the plaintiff was a threat when he "exited his truck at night, verbally pushed back, ignored a command to not move, and walked towards" the officers). Thus, Defendants had reasonable grounds to believe that Plaintiff was a safety concern when she refused to stay in her car and began approaching the arresting officers. Therefore, despite Plaintiff's contentions, the second *Graham* factor favors a conclusion that a somewhat greater use of force was objectively reasonable.

However, the *Graham* factors are not exhaustive. *See Graham*, 490 U.S. at 396. When the factors are not heavily determinative, as is the case here, the Court may consider further circumstances surrounding Plaintiff's claim, such as the severity of her injury. *Koch*

*v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011). In this regard, it is unclear what the precise source of Plaintiff's injury is. Despite Plaintiff's statement that she was injured "[i]n the process of [Defendants] handcuffing" her, she does not specify whether it was being pushed against the car, held and handcuffed, or being handcuffed too tightly that actually caused her arm injury. *Am. Compl.* [#6] at 7. In light of this ambiguity, the Court considers alternatively Plaintiff's injury as either stemming from being pushed against her car, or from the handcuffs.

First, assuming the injury resulted from being pushed, the Court finds Plaintiff's allegations comparable to *Segura v. Jones*, where the plaintiff claimed excessive force when her pre-existing back condition was exacerbated as a result of being pushed against a wall. 259 F. App'x 95, 103 (10th Cir. 2007). The court held that the defendant officer was entitled to qualified immunity on the basis that the plaintiff's susceptibility to injury was not obvious and the plaintiff was being uncooperative with the officer's investigation. *See id.* The court reasoned that although "pushes and shoves must be adjusted" to be reasonable, Fourth Amendment analysis takes into consideration "the fact that police officers are often forced to make split-second judgments." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). Accordingly, an officer's use of force may be reasonable in situations where the arrestee is being uncooperative and there is no obvious reason for restraint, such as a visible pre-existing condition. Here, Plaintiff was being uncooperative by leaving her car when Defendants had asked her not to. *See Am. Compl.* [#6] at 7. Moreover, from an officer's perspective, she actively interfered with another arrest. *See id.* In light of the evident tension at the scene, being pushed against her car in order for Defendants to restrain her was not constitutionally forbidden. *See Marotta v. Rocco-McKeel*, No. 08-cv-02421-WJM-

CBS, 2011 WL 2633028, at *5 (D. Colo. Jun. 27, 2011) (finding that using force to gain physical control over an "overtly angry and uncooperative" plaintiff was reasonable). Considering that Plaintiff has not alleged any extenuating circumstances warranting restraint of force, there is no reason to assume that the amount used by Defendants was outside of the scope necessary to restrain her. *Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."). Hence, the amount of force used during the alleged exchange was not objectively unreasonable as a matter of law.

Second, alternatively assuming Plaintiff's injury is related to her handcuffing, she is held to a higher pleading standard to overcome Defendants' qualified immunity defense. "[I]n a handcuffing case to recover on an excessive force claim, a plaintiff must show that the officers used greater force than would have been reasonably necessary to effect a lawful seizure, and some *actual injury* caused by the unreasonable seizure that is *not de minimis*." *Fisher*, 584 F.3d at 894 (emphasis added). The Tenth Circuit Court of Appeals concluded in *Fisher v. City of Las Cruces* that a showing of non-de minimis injury is not only required in cases where handcuffs are applied too tightly, but also when the manner of handcuffing may have been excessive. *Id.* at 898-900 (where the defendant officers' use of force was unreasonable when they exacerbated the plaintiff's gunshot wound by handcuffing his arms behind his back). Hence, Plaintiff is required to allege some non-de minimis injury regardless of whether her injury stems from the manner in which the handcuffs were applied or if they were applied too tightly.

On this front, Plaintiff's alleged injury falls within a grey area between those that are

-14-

obviously de minimis and those that are substantial. The Tenth Circuit has consistently rejected excessive force claims on the basis that handcuffs caused "minimal, temporary injuries—like pain, numbness, or swelling." *See Segura*, 259 F. App'x at 102 (concluding that the plaintiff's handcuff injury which showed no lingering signs the next day was de minimis); *Koch* 660 F.3d at 1248 (holding that the plaintiff's "superficial abrasions" and alleged numbness in her wrist and forearm were de minimis injuries); *Scott v. City of Albuquerque*, 711 F. App'x 871, 881 (10th Cir. 2017) (holding that the plaintiff's impermanent pain while handcuffed was not severe enough to show excessive force). In contrast, Plaintiff's injuries are alleged to have had a prolonged impact. *Am. Compl.* [#6] at 7. However, Plaintiff makes no mention in her Amended Complaint of the severity or permanency of her injury, instead vaguely stating that she has experienced "weakness and pain." *Cf. Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1209 (10th Cir. 2008) (concluding that a constitutional violation occurred when the plaintiff suffered permanent nerve damage resulting from being handcuffed too tightly). As a result, the Court finds that Plaintiff's injury, despite more than temporary pain, is akin to those expressly rejected by the Tenth Circuit, being one that is vaguely alleging pain and weakness, for perhaps an indeterminate period of time.

In light of Plaintiff's failure to sufficiently allege a non-de minimis injury and the reasonableness of being pushed into her car given the circumstances, the Court finds that Defendants' use of force was not objectively unreasonable as a matter of law. Consequently, Plaintiff has not carried her burden to establish that Defendants violated a constitutional right. Having failed to adequately allege the first prong required to overcome the qualified immunity defense, there is no need to discuss whether Defendants violated

established law. *A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016) ("[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense."). Therefore, Defendants are entitled to qualified immunity, and Plaintiff's claim against Defendants in their individual capacities is **dismissed without prejudice**. *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding that prejudice should not attach to a dismissal when the plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

### C. Official Capacity: *Monell*

The Court turns next to Plaintiff's claims against Defendants in their official capacities. "An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998). "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978) (footnote omitted). An initial question when discussing liability of a local governing body is whether there was a constitutional violation by its employees. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."). As discussed above in Section III.B., Plaintiff has not adequately alleged a Fourth Amendment violation by Defendants. Therefore Plaintiff fails to meet this portion

of the municipal liability test. Accordingly, the Motion [#13] is **granted** with respect to the official capacity claims, which are **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 127.

## IV. Conclusion

Accordingly, for the reasons stated above,

IT IS HEREBY **ORDERED** that the Motion [#13] is **GRANTED** and that Plaintiff's excessive force claim is **DISMISSED without prejudice**.

IT IS FURTHER **ORDERED** that Plaintiff may file a second amended complaint further explaining the factual basis for her claim **no later than July 9, 2019**. Failure to do so will result in the Court closing this case without further notice.

Dated: June 18, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge